# EXHIBIT A

**MONTGOMERY McCRACKEN**

ATTORNEYS AT LAW

| **Peter Breslauer** | 1735 Market Street | Direct Dial: | 215-772-7271 |
| Admitted in Pennsylvania | Philadelphia, PA 19103-7505 | Fax: | 215-731-3733 |
| | Tel:  215-772-1500 | Email:    pbreslauer@mmwr.com |

January 17, 2023

**<u>Via Hand Delivery</u>**

Riot Games, Inc.
c/o C T Corporation System
330 N. Brand Blvd, Suite 700
Glendale, CA 91203

      Re:    *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.)
               <u>Subpoena to Riot Games, Inc. to Produce Documents</u>

Dear Steam Partner:

      We represent Valve Corporation in the above-captioned case, and are serving the enclosed Subpoena to Produce Documents on you as registered agent for Riot Games, Inc. ("Riot Games"). Riot Games is a longstanding business partner of Valve in the distribution of games and related items, and Valve values its business relationship with Riot Games.

      The objective of the Subpoena is to gather information that Valve needs for its defense of the antitrust class actions brought against it by developers Wolfire Games and Dark Catt Studios. Valve recognizes that some of the documents Valve requests in the subpoena may contain highly sensitive and confidential business information of Riot Games. The Protective Order entered in this case gives Riot Games the opportunity to limit access to those kinds of documents and the information contained in them to Valve's and the plaintiffs' outside counsel, experts, and consultants for use in this case, but not Valve's or the plaintiffs' employees, by designating them "Highly Confidential – Attorney's Eyes Only." We have enclosed a copy of the Protective Order with the Subpoena. Please see section 2.b.

      Under Federal Rule of Civil Procedure 45, any objection to the Subpoena is due fourteen days after your agent received it, and the Subpoena states that the requested documents are to be produced by February 13, 2023. We invite Riot Games to discuss with us any extension of those dates you may need.

      At the time of production, any physical copies of documents should be produced at the following address, although we would be happy to receive the documents electronically in lieu of physical production:

---

Montgomery McCracken Walker & Rhoads LLP

Riot Games, Inc.
January 17, 2023
Page 2


Direct Legal Support, Inc.
Attn: Peter Breslauer
1541 Wilshire Blvd. #550
Los Angeles, CA 90017

We look forward to discussing the Subpoena with your counsel and will do our best to accommodate your needs.

Very truly yours,

*/s/ Peter Breslauer*
Peter Breslauer

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington ▼

| | |
|---|---|
| In re: Valve Antitrust Litigation | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:21-cv-00563-JCC |
| | ) |
| _____ | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Riot Games, Inc.
c/o C T Corporation System, 330 N. Brand Blvd, Suite 700, Glendale, CA 91203

*(Name of person to whom this subpoena is directed)*

☛ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Direct Legal Support, Inc., Attn: Peter Breslauer 1541 Wilshire Blvd. #550 Los Angeles, CA 90017 | Date and Time: 02/13/2023 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   01/17/2023

| *CLERK OF COURT* | OR | /s/ Peter Breslauer |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Valve Corporation
_____ , who issues or requests this subpoena, are:
Peter  Breslauer, Montgomery McCracken Walker & Rhoads LLP, 1735 Market Street, Philadelphia, PA 19103, 215-772-7271, pbreslauer@mmwr.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:21-cv-00563-JCC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## INSTRUCTIONS AND DEFINITIONS

1.      This Subpoena seeks production of documents in connection with *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.), in which a Consolidated Amended Class Action Complaint was filed on August 26, 2022 (Dkt. # 99).

2.      If any portion of a document is responsive to any Document Request, the entire document must be produced.

3.      All documents produced electronically are to include all available metadata fields, including but not limited to the date created and any custodian information.

4.      These document requests are intended to cover all documents and things in your charge or possession as well as those subject to your custody or control, whether in your possession, at the office of your attorneys, or at any other place or in the possession of any other person or entity subject to your control.

5.      If you cannot respond to any of the following Document Requests in full after exercising due diligence in attempting to secure the documents necessary to do so, respond to the fullest extent possible, producing all documents within your possession, custody, or control as of the date of your response to these Document Requests, and explain why you cannot respond in full and state the nature of the documents, and the information therein, that you cannot produce.

6.      Unless otherwise specified, the period during which documents that are to be produced in response to these Document Requests were created is January 1, 2003 to the present.

7.      If you claim any privilege, whether based on statute or otherwise, as a ground for not responding to a request or any portion thereof, set forth each and every fact and ground upon which the privilege is based, including all facts required under Fed. R. Civ. P. 45(e)(2)(A) sufficient for the Court to make a full determination whether the claim of privilege is valid.

8.      If you claim that any document you produce contains a trade secret or other confidential research, development, or commercial information that should not be revealed or be

revealed only in a specified way, produce the document subject to the procedures set forth in the Stipulated Protective Order filed in this action on August 16, 2022 (Dkt. # 95), a copy of which is enclosed with this Subpoena.

9.     The singular includes the plural, and the connectives "and" and "or" are to be construed disjunctively or conjunctively, so as to bring within the scope of your responses all information that might otherwise be construed as outside the scope of a request.

10.     "Console" means a specialized computer other than a PC, either stationary or handheld, designed to play games. For purposes of this definition, "console" also includes Nintendo Switch.

11.     "Develop" means to create a game.

12.     "Distribution platform" means, without limitation, websites (*e.g.*, https://store.steampowered.com/, https://www.leagueoflegends.com, and https://ruinedking.com/), streaming media providers, websites of game developers and publishers, Riot Client, launchers, cloud-based game streaming services, and all other facilities (including merchandise stores) designed or operated for distribution of games via the Internet.

13.     "DLC" and "downloadable content" mean supplemental content for a released game distributed through the Internet, including through a distribution platform, by the game's publisher, developer, or another entity.

14.     "Document" means all documents, electronically stored information, and things described in Fed. R. Civ. P. 34(a)(1).

15.     "Game" means, without limitation, video games designed for operation, locally or while connected to a server, streaming media, or other electronic service, on personal computers, consoles, smartphones, or other electronic computing devices, whether in individual or multiplayer modes, and whether distributed over distribution platforms, by retail stores, online resellers, or by other means.

16.     "In-game purchases" means goods and services purchased from inside a game, including points, credits, and other items that can be exchanged for goods or services.

17.     "Mobile device" means a cellular telephone that includes additional software functions, such as email or Internet browsing capability.

18.     "PC" and "personal computer" mean a computer equipped with a microprocessor designed for use by one person at a time, but does not mean other devices such as gaming consoles, tablets, and cellular telephones and smartphones. By way of example, "PC" includes Windows-based computers, Apple iMac and MacBook computers, Linux-based personal computers, and Chromebooks. For purposes of this definition, "PC" also includes Steam Deck.

19.     "Person" shall be deemed to include, in the plural as well as singular, any natural person, firm, association, partnership, joint venture, corporation or other entity, unless the context otherwise indicates.

20.     "Publish" means to market and distribute a game.

21.     "Referring to or relating to" means pertaining to, referring to, relating to, alluding to, connected with, commenting on, regarding, comprising, discussing, showing, describing, mentioning, memorializing, analyzing, embodying, reflecting, constituting, or evidencing, in whole or in part.

22.     "Software" means games, DLC, and in-game purchases.

23.     "You" and "Riot Games" mean Riot Games, Inc. and each of its agents, representatives, employees, contractors, and any other person, predecessors, parent companies, subsidiaries, acquired companies, and businesses, partnerships, affiliates, and entities, of whatever kind, in which any of them has a business interest or which is subject to your control (including without limitation Radiant Entertainment, Inc., Hypixel Studios Ltd., and Riot Forge, LLC).

## DOCUMENT REQUESTS

1.     Documents sufficient to show, for each month from January 1, 2003 to the present, your total sales revenues and units sold for Software for PCs, consoles, and mobile devices. For purposes of responding to this Request,

      a.   The sales revenue and unit sales data should be stated separately for games, DLC, and in-game purchases;

3

b.  The sales revenue and unit sales data should be stated separately for

    i.  Software, not distributed through any Riot Games distribution platform, that Riot Games published but was developed by others;

    ii.  Software, not distributed through any Riot Games distribution platform, that Riot Games developed but was published by others;

    iii.  Software, not distributed through any Riot Games distribution platform, that Riot Games both developed and published;

    iv.  Software, distributed through any Riot Games distribution platform, that Riot Games published but was developed by others;

    v.  Software, distributed through any Riot Games distribution platform, that Riot Games developed but was published by others;

    vi.  Software, distributed through any Riot Games distribution platform, that Riot Games both developed and published; and

    vii.  Software, distributed through any Riot Games distribution platform, that was neither developed nor published by Riot Games.

c.  The sales revenue and unit sales data should be stated separately for PCs, consoles, and mobile devices;

d.  The sales revenue and unit sales data should separately reflect sales to US purchasers and sales to purchasers in the rest of the world;

e.  The sales revenue and unit sales data should include, separately and for each company, sales of Software by all companies you acquired, operated, or in which you had a business interest from January 1, 2003 to the present, including without limitation Riot Forge, LLC, Radiant Entertainment, Inc., and Hypixel Studios Ltd.;

f.  State, by month, whether the sales revenue data produced in response to this Request reflect wholesale prices, retail prices (*i.e.,* consumer prices), or some other measure. To the extent possible, please provide retail prices in responding to this Request; and

4

g.   The sales revenue data should be net sales (gross sales less returns, less chargebacks from credit card companies, payment processors or others, less sales tax, and less value-added tax).

2.      Documents sufficient to show, for each month from January 1, 2003 to the present for which you produce total sales revenue and unit sales data in response to Request no. 1:

a.   The revenue you received or retained for Software not distributed through any Riot Games distribution platform, including without limitation for Software offered on distribution platforms other than any Riot Games distribution platform and Software sold in wholesale transactions for resale by others;

b.    The revenue share (sometimes referred to as the "commission") you received for Software published by others and distributed through any Riot Games distribution platform; and

c.   The revenue you retained, net of payments to others, for Software published by you and distributed through any Riot Games distribution platform.

3.      Documents sufficient to show, for each month from January 1, 2003 to the present for which you produce total sales revenue and unit sales data in response to Request no. 1, the percentage of reported total sales revenues and units attributable to sales in physical packaging and to digital distribution of Software designed for operation on consoles.

4.      Documents sufficient to show, for each month from January 1, 2003 to the present for which you produce total sales revenue and unit sales data in response to Request no. 1, the percentage of reported total sales revenues and units attributable to sales in physical packaging and to digital distribution of Software designed for operation on PCs.

5.      Documents sufficient to show the proportion of total sales revenues and units sold, described in the documents produced in response to Request no. 1, that were attributable to physical packaging of Software that contained codes or keys to enable downloading of the software in contrast to physical packaging that contained digital media, *e.g.*, CDs or DVDs.

6.      Documents sufficient to show how, rather than providing digital media inside physical packaging, the provision of codes or keys for downloading and activation of games in physical packaging affected the revenues, costs, and margins of the Software sold by you.

7.      Documents sufficient to show how, rather than providing digital media inside physical packaging, the online distribution of codes or keys for downloading and activation of games affected the revenues, costs, and margins of the Software sold by you.

8.      Documents sufficient to show how the provision, at no charge to publishers, of codes or keys for downloading and activation of games affected the revenues, costs, and margins of the Software sold by you.

9.      Documents sufficient to determine, separately by total unit sales and total sales revenues, the top five resellers to which you distributed Software in physical packaging, and the corresponding total unit sales and total sales revenues for each reseller so identified.

10.      Documents sufficient to determine, separately by total unit sales and total sales revenues, the top five resellers to which you distributed Software for digital download, and the corresponding total unit sales and total sales revenues for each reseller so identified.

11.      Documents sufficient to show for each month from January 1, 2003 to the present, the average amount of the total sales revenue that was received by developers of Software for which you acted as a publisher.  For purposes of this Request, "developers" refers to persons who are not your employees or agents, and includes entities that are separately organized from you and not divisions or business units otherwise under your control.

12.      Documents sufficient to show, from January 1, 2003 to the present, what companies and products you regard as included in the markets that include distribution of games.

13.      Documents sufficient to show, from January 1, 2003 to the present, whether you regard Valve as a competitor to Riot Games in sales of games, and whether you regard Steam as a competitor to any Riot Games distribution platform.

14.      All documents, from January 1, 2003 to the present, that list, compare, count, analyze, or describe one or more features of both Steam and any Riot Games distribution platform.

6

15.     All documents, from January 1, 2003 to the present, that discuss your potential or actual adoption, on any Riot Games distribution platform, of a feature of Steam or one similar to a feature of Steam.

16.     All documents, from January 1, 2003 to the present, that calculate, discuss, compare, or describe the market share held by Steam or any Riot Games distribution platform.

17.     All documents that describe, report, or calculate the cost of (a) developing any Riot Games distribution platform, (b) individual features you have added to any Riot Games distribution platform, or (c) the profit margin you realized on any Riot Games distribution platform.

18.     All documents describing, referring, or relating to any policies or guidelines for pricing of Software on any Riot Games distribution platform, including any policies or guidelines for pricing of games on any Riot Games distribution platform that are also sold on storefronts operated by other companies.

19.     All documents describing, referring, or relating to your decision to launch any Riot Games distribution platform, including but not limited to Riot's League of Legends launcher.

20.     All documents describing, referring, or relating to the ease, difficulty, expense, or barriers, if any, to creating or maintaining a distribution platform in competition with others.

21.     All documents relating to the reasons you distribute or considered distributing games on other stores or distribution platforms, including Steam, instead of or in addition to any Riot Games distribution platform, including the reasons you stopped releasing games on Steam or began doing so again (if you ever made such decisions).

22.     All documents relating to the reasons you do not distribute League of Legends on Steam or your consideration of doing so.

23.     All documents describing, referring, or relating to customers of any Riot Games distribution platform who are also customers of Steam, including all documents calculating, estimating, or discussing the numbers of such persons, including at specific times or during specific periods.

24.     All documents describing, referring, or relating to features and functionality for cross-play between games offered on any Riot Games distribution platform and any other platform, including but not limited to Steam, including without limitation the features and functionality described at https://dev.epicgames.com/docs/epic-account-services/cross-play-across-platforms.

25.     All documents discussing, describing, or analyzing competition in the market or markets that include distribution of games, including all such documents you produced in discovery or otherwise in *In re: Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.) or *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR (N.D. Cal.).

26.     All documents you provided to, or you received from, any state, federal, or international regulator, government entity, lobbyist, trade association, or consultant referring or relating to any investigation or review of antitrust, competition, or consumer protection issues, or proposed or existing regulation involving, Riot Games, any Riot Games distribution platform, Steam, or any other developers, publishers, or distributors of Software.

27.     All documents describing, referring, or relating to *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.) or the lawsuits filed by Wolfire Games, LLC, Dark Catt Studios Holdings, Inc., and Dark Catt Studios Interactive LLC consolidated therein.

28.     All documents and communications between you, or anyone employed by or representing you, and any employee or representative of, or attorney representing, Wolfire Games, LLC, Dark Catt Studios Holdings, Inc., or Dark Catt Studios Interactive LLC, including without limitation all documents and communications referring or relating to *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.) or the lawsuits filed by Wolfire Games, LLC, Dark Catt Studios Holdings, Inc., and Dark Catt Studios Interactive LLC consolidated therein, or the subject matter or allegations of the foregoing lawsuits.

The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

IN RE VALVE ANTITRUST LITIGATION

Case No. 2:21-cv-00563-JCC

**STIPULATED PROTECTIVE ORDER**

**NOTE ON MOTION CALENDAR:
AUGUST 12, 2022**

PURPOSES AND LIMITATIONS

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this agreement is consistent with LCR 26(c). It does not confer blanket protection on all disclosures or responses to discovery, the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles, and it does not presumptively entitle parties to file confidential information under seal.

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 1

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
206.624.3600

2.     "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY"
MATERIAL

a.     "CONFIDENTIAL" MATERIAL

"Confidential" material shall include the following information, documents, and tangible things produced or otherwise exchanged:

i.     Non-public product, product use, or business plan or strategy information, including research and development and product use data; market information; proprietary product development or use information; non-public financial, sales, profitability, costs, or other business data, metrics or projections.

ii.     Proprietary, commercial, or client information, which is defined as:

A.     Research, development, or commercial information that is of a competitively sensitive nature and that a reasonably prudent business person in the applicable field would not release to or share with the public in the ordinary course of business, and the release of which would likely cause proprietary, competitive, or economic harm; or

B.     "Trade secret," as set forth in the Washington Trade Secrets Act, RCW 19.108.010, meaning information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

iii.     Non-public information received from, belonging to, or regarding third parties that is designated as confidential or protected under another agreement (such as a

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 2

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

non-disclosure agreement or a contract with a confidentiality provision) and which the producing party is contractually obligated to keep confidential.

b.  "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" MATERIAL

"Highly Confidential – Attorney's Eyes Only" material shall include the following information, documents, and tangible things produced or otherwise exchanged:

     i.  Financial, proprietary, commercial, business, research and development, or customer/user/client information, that is of a highly competitively sensitive nature and that a reasonably prudent business person in the applicable field would not release to or share with the public in the ordinary course of business, and the release of which is likely to cause proprietary, competitive, or economic harm;

     ii.  Information related to product users, including but not limited to Steam users and Steam account information, or employees, which is not in the ordinary course of business made publicly available, is not of legitimate concern to the public, and which a reasonable product user or employee might consider personal or private; or

     iii.  Information produced, obtained, or used in any other litigation, court proceeding, or government action that was designated in that proceeding as "Highly Confidential," "Attorneys' Eyes Only," or similar designation indicating an intent to provide a high degree of protection of the confidentiality of such information.

3.  SCOPE

The protections conferred by this agreement cover not only confidential material (as defined above) and Highly Confidential – Attorney's Eyes Only material (as defined above), but also (1) any information copied or extracted from confidential material or Highly Confidential – Attorney's Eyes Only material; (2) all copies, excerpts, summaries, or compilations of confidential material or Highly Confidential – Attorney's Eyes Only material; and (3) any testimony, conversations, or presentations by parties or their counsel that might reveal confidential material or Highly Confidential – Attorney's Eyes Only material.

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

However, the protections conferred by this agreement do not cover information that is in the public domain or becomes part of the public domain through trial or otherwise.

4.     ACCESS TO AND USE OF CONFIDENTIAL MATERIAL AND HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY MATERIAL

      4.1    <u>Basic Principles</u>. A receiving party may use confidential material and Highly Confidential – Attorney's Eyes Only material that is disclosed or produced by another party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Confidential material and Highly Confidential – Attorney's Eyes Only material may be disclosed only to the categories of persons and under the conditions described in this agreement. Confidential material and Highly Confidential – Attorney's Eyes Only material must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this agreement.

      4.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose any confidential material only to:

      (a)     the receiving party's counsel of record in this action, as well as employees of counsel to whom it is reasonably necessary to disclose the information for this litigation;

      (b)     the officers, directors, and employees (including in house counsel) of the receiving party to whom disclosure is reasonably necessary for this litigation;

      (c)     experts and consultants to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

      (d)     the court, court personnel, and court reporters and their staff;

      (e)     copy or imaging services retained by counsel to assist in the duplication of confidential material, provided that counsel for the party retaining the copy or imaging service instructs the service not to disclose any confidential material to third parties and to immediately return all originals and copies of any confidential material;

(f)     during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the designating party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal confidential material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this agreement;

(g)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

(h)     a party's witnesses designated as 30(b)(6) representatives with respect to documents produced by the party.

4.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" Material.  Unless otherwise ordered by the court or permitted in writing by the party or non-party designating such material, all information or items designated as "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" material shall not be disclosed to any person except those listed in subparagraphs (a), (c), (d), (e), (g) and (h) of paragraph 4.2 above.

4.4     Filing Confidential Material and Highly Confidential – Attorney's Eyes Only Material. Before filing confidential material or Highly Confidential – Attorney's Eyes Only material, or discussing or referencing such material in court filings, the filing party shall confer with the designating party, in accordance with Local Civil Rule 5(g)(3)(A), to determine whether the designating party will remove the confidential or Highly Confidential – Attorney's Eyes Only designation, whether the document can be redacted, or whether a motion to seal or stipulation and proposed order is warranted. During the meet and confer process, the designating party must identify the basis for sealing the specific confidential or Highly Confidential – Attorney's Eyes Only information at issue, and the filing party shall include this basis in its motion to seal, along with any objection to sealing the information at issue.  Local Civil Rule 5(g) sets forth the procedures that must be followed and the standards that will be applied when a party seeks

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 5

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

permission from the court to file material under seal. A party who seeks to maintain the confidentiality of its information must satisfy the requirements of Local Civil Rule 5(g)(3)(B), even if it is not the party filing the motion to seal. Failure to satisfy this requirement will result in the motion to seal being denied, in accordance with the strong presumption of public access to the Court's files.

5. **DESIGNATING PROTECTED MATERIAL**

    5.1 <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each party or non-party that designates information or items for protection under this agreement must take care to limit any such designation to specific material that qualifies under the appropriate standards. The designating party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this agreement.

    Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or delay the case development process or to impose unnecessary expenses and burdens on other parties) expose the designating party to sanctions.

    If it comes to a designating party's attention that information or items that it designated for protection do not qualify for protection, the designating party must promptly notify all other parties that it is withdrawing the mistaken designation.

    5.2 <u>Manner and Timing of Designations</u>. Except as otherwise provided in this agreement (see, *e.g.*, second paragraph of section 5.2(b) below), or as otherwise stipulated or ordered, disclosure or discovery material that qualifies for protection under this agreement must be clearly so designated before or when the material is disclosed or produced.

        (a) <u>Information in documentary form</u>: (*e.g.*, paper or electronic documents and deposition exhibits, but excluding transcripts of depositions or other pretrial or trial proceedings),

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 6

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

the designating party must affix the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" to each page that contains confidential material or Highly Confidential – Attorney's Eyes Only material. If only a portion or portions of the material on a page qualifies for protection, the producing party also must clearly identify the protected portion(s) (*e.g.*, by making appropriate markings in the margins).

        (b)    <u>Testimony given in deposition or in other pretrial proceedings</u>: Deposition testimony and the transcripts and video recordings thereof of depositions conducted during pretrial discovery in this litigation shall be treated as HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY for a period of 40 days, or for as many days as the parties shall agree, after receipt of such deposition transcript and/or video recordings to allow time for the deponent or counsel for that deponent, or any party or non-party or its counsel, to notify all parties of any HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY or CONFIDENTIAL Information contained therein. If a party or non-party desires to protect CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY information at trial, the issue should be addressed during the pre-trial conference.

        (c)    <u>Other tangible items</u>: the producing party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY." If only a portion or portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portion(s).

    5.3    <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this agreement for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this agreement.

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 7

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

6.    <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

      6.1    <u>Timing of Challenges</u>. Any party or non-party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a designating party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

      6.2    <u>Meet and Confer</u>. The parties must make every attempt to resolve any dispute regarding confidential or Highly Confidential – Attorney's Eyes Only designations without court involvement. Any motion regarding confidential or Highly Confidential – Attorney's Eyes Only designations or for a protective order must include a certification, in the motion or in a declaration or affidavit, that the movant has engaged in a good faith meet and confer conference with other affected parties in an effort to resolve the dispute without court action. The certification must list the date, manner, and participants to the conference. A good faith effort to confer requires a face-to-face meeting or a telephone conference.

      6.3    <u>Judicial Intervention</u>. If the parties cannot resolve a challenge without court intervention, the designating party may file and serve a motion to retain confidentiality under Local Civil Rule 7 (and in compliance with Local Civil Rule 5(g), if applicable). The burden of persuasion in any such motion shall be on the designating party. Frivolous challenges, and those made for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may expose the challenging party to sanctions. All parties shall continue to maintain the material in question as confidential or Highly Confidential – Attorney's Eyes Only until the court rules on the challenge.

7. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" that party must:

(a) promptly notify the designating party in writing and include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this agreement. Such notification shall include a copy of this agreement; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the designating party whose confidential material or Highly Confidential – Attorney's Eyes Only material may be affected.

8. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a receiving party learns that, by inadvertence or otherwise, it has disclosed confidential material or Highly Confidential – Attorney's Eyes Only material to any person or in any circumstance not authorized under this agreement, the receiving party must immediately (a) notify in writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the protected material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this agreement, and (d) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

9. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a producing party gives notice to receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 9

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

receiving parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement that provides for production without prior privilege review. The parties agree to the entry of a non-waiver order under Fed. R. Evid. 502(d) as set forth herein.

10.     NON TERMINATION AND RETURN OF DOCUMENTS

Within 60 days after the termination of this action, including all appeals, each receiving party must return all confidential material and Highly Confidential – Attorney's Eyes Only material to the producing party, including all copies, extracts and summaries thereof. Alternatively, the parties may agree upon appropriate methods of destruction.

Notwithstanding this provision, counsel are entitled to retain one archival copy of all documents filed with the court, trial, deposition, and hearing transcripts, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain confidential material or Highly Confidential – Attorney's Eyes Only material.

The confidentiality obligations imposed by this agreement shall remain in effect until a designating party agrees otherwise in writing or a court orders otherwise.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED this 12th day of August, 2022.

s/ Alicia Cobb

Alicia Cobb, WSBA #48685
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Telephone (206) 905-7000
Fax (206) 905-7100
aliciacobb@quinnemanuel.com

Steig D. Olson (*pro hac vice*)
David LeRay (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue
New York, New York 10010
Telephone (212) 849-7231
Fax (212) 849-7100
steigolson@quinnemanuel.com

Adam Wolfson (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone (213) 443-3285
Fax (213) 443-3100
adamwolfson@quinnemanuel.com

Charles Stevens (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone (415) 875-6600
Fax (415) 875-6700
charliestevens@quinnemanuel.com

*Proposed Interim Co-Lead Counsel*

s/ Stephanie L. Jensen

Stephanie L. Jensen, WSBA #42042
WILSON SONSINI GOODRICH &
ROSATI P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone (206) 883-2500
Fax (206) 883-2699
sjensen@wsgr.com

Kenneth R. O'Rourke (*pro hac vice*)
Scott A. Sher (*pro hac vice*)
Allison B. Smith (*pro hac vice*)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1700 K Street, NW, Suite 500
Washington, DC 20006
Telephone (202) 973-8800
Fax (202) 973-8899
korourke@wsgr.com
ssher@wsgr.com
allison.smith@wsgr.com

W. Joseph Bruckner (*pro hac vice*)
Joseph C. Bourne (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
wjbruckner@locklaw.com
jcbourne@locklaw.com

*Proposed Interim Co-Lead Counsel*

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

1  David Golden (*pro hac vice*)
   CONSTANTINE CANNON LLP
2  1001 Pennsylvania Ave., 22nd Floor
   Washington, D.C. 20004
3  Telephone (202) 204-4527
   Fax (202) 204-3501
4  dgolden@constantinecannon.com

5  A. Owen Glist (*pro hac vice*)
   Ankur Kapoor (*pro hac vice*)
6  Jeffrey I. Shinder (*pro hac vice*)
   CONSTANTINE CANNON LLP
7  335 Madison Avenue, 9th Floor
   New York, NY 10017
8  Telephone (212) 350-2700
   Fax (212) 350-2701
9  oglist@constantinecannon.com

10 *Proposed Interim Co-Lead Counsel*

11 Kenneth J. Rubin (*pro hac vice*)
   Timothy B. McGranor (*pro hac vice*)
12 Kara M. Mundy (*pro hac vice*)
   VORYS, SATER, SEYMOUR AND
13   PEASE LLP
   52 East Gay Street
14 Columbus, Ohio 43215
   Telephone (614) 464-6400
15 Fax (614) 719-4796
   kjrubin@vorys.com
16 tbmcgranor@vorys.com
   kmmundy@vorys.com
17
   Thomas N. McCormick (*pro hac vice*)
18 VORYS, SATER, SEYMOUR AND
     PEASE LLP
19 4675 MacArthur Court, Suite 700
   Newport Beach, California 92660
20 Phone (949) 526-7903 | Fax (949) 383-2384
   tnmccormick@vorys.com
21
   *Proposed Interim Executive Committee*
22 *Member*

23

24

25

26

s/ Gavin W. Skok
_____
Gavin W. Skok, WSBA #29766
FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Telephone: (206) 624-3600
Fax: (206) 389-1708
gskok@foxrothschild.com

Kristen Ward Broz
FOX ROTHSCHILD LLP
2020 K. St. NW, Ste. 500
Washington, DC 20006
Telephone (202) 794-1220
Fax (202) 461-3102
kbroz@foxrothschild.com

Charles B. Casper (*pro hac vice*)
MONTGOMERY McCRACKEN WALKER
& RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Telephone (215) 772-1500
ccasper@mmwr.com

*Attorneys for Defendant Valve Corporation*

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 12

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
206.624.3600

PURSUANT TO STIPULATION, IT IS SO ORDERED

IT IS FURTHER ORDERED that pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

DATED this 16th day of August 2022.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 13

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Western District of Washington on _____ [date] in the case of *In re Valve Antitrust Litigation*, Case No. 2:21-cv-00563-JCC . I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Western District of Washington for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 14

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600