1  LISA J. DEMSKY (State Bar No. 186006)
   Lisa.Demsky@mto.com
2  JESSICA O. LAIRD (State Bar No. 331713)
   Jessica.Laird@mto.com
3  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor
4  Los Angeles, California 90071-3426
   Telephone:   (213) 683-9100
5  Facsimile:   (213) 687-3702

6

7  *Attorneys for Non-Party Riot Games, Inc.*

8
                    UNITED STATES DISTRICT COURT
9
                    CENTRAL DISTRICT OF CALIFORNIA
10

11 | IN RE: VALVE ANTITRUST LITIGATION | Case No. 2:24-mc-00006
12 | | *Miscellaneous Action Relating to W.D. Wash. Case No. 2:21-cv-00563-JCC*
13 | | **DECLARATION OF LISA J. DEMSKY IN SUPPORT OF RIOT GAMES, INC.'S STATEMENT IN JOINT STIPULATION**

18       I, Lisa J. Demsky, declare as follows:

19       1.   I am a member of the law firm of Munger, Tolles & Olson LLP, counsel for non-party Riot Games, Inc. ("Riot"). I am licensed to practice law in the State of California and I am admitted to the Central District of California. I make this declaration in support of Riot's statement in the Joint Stipulation filed pursuant to Local Rule 37. I am over the age of 18 and competent to testify to the matters in this Declaration. I make this Declaration on the basis of my personal knowledge.

-1-
DECLARATION OF LISA DEMSKY

2. On January 18, 2023, Valve served a subpoena duces tecum on non-party Riot Games ("Riot"), seeking 28 expansive categories of highly sensitive, non-public information. These requests asked for twenty years of documents and data even though Riot has not been in existence for twenty years. A number of requests also sought interrogatory-like answers, rather than documents, and insights into Riot's strategic market analysis. Riot served its response to Valve's subpoena on February 1, 2023, objecting to the requests on the grounds that they were unduly burdensome, not relevant, harassing, overbroad, and improper given Riot's non-party status, among other things. Riot's response contained only objections; based on these objections, Riot declined to provide any documents. A true and accurate copy of Riot's response is attached to the Breslauer Declaration as Exhibit B.

3. At the request of outside counsel for Valve, I and my colleague Shannon Aminirad, an attorney at Munger, Tolles & Olson, met and conferred with Valve telephonically multiple times, on February 23, March 14, May 15, and June 9. During each conference, Riot reiterated its objections to Valve's requests on the grounds stated in its February 1 response. In an email to counsel for Valve on July 21, I restated Riot's objections, including Valve's failure to meaningfully narrow the scope of the requests during meet-and-confers, and requested that Valve articulate what, if any, "substantial need" formed the basis for its requests. Valve did not respond to this communication. Attached hereto as **Exhibit 1** is a true and accurate copy of my July 21 communication. This communication is not included among the Exhibits attached to Valve's declaration.

4. On Friday, October 20, 2023, counsel for Valve contacted me requesting a meet-and-confer regarding Valve's discovery requests. I responded by email that same day, stating I was out of the office but would respond the following week; and on Monday, October 23, 2023, I reiterated in an email to Valve's counsel that Riot's position had not changed since my July 21

1  email, to which I had not received a response, but that I was willing to participate in another phone
2  call.  I spoke with counsel for Valve on October 25, during which I re-stated Riot's objections
3  raised in previous conferences, including that the information sought is highly sensitive
4  commercial information that is not relevant to the case based on the market pleaded in the
5  Consolidated Second Amended Complaint.  We also discussed the Protective Order and
6  Supplemental Protective Order, and I proposed an agreement that neither Valve nor Plaintiffs
7  would seek to introduce Riot's material at trial or otherwise in a manner that would result in
8  disclosure outside of these Orders.  Valve's counsel agreed to present the proposal to his clients
9  and Plaintiffs.  To date, Valve's counsel has never agreed to this proposal.  On October 27, Valve
10 made a counter offer that Valve and Plaintiffs would "use their best efforts to avoid asking to
11 disclose, outside the permitted group, Riot's information in non-aggregated, specifically identified
12 form."  The Consolidated Second Amended Complaint is attached to the Declaration of Peter
13 Breslauer as Exhibit D.

14      5.    On October 30, 2023, Valve sent a Rule 30(b)(6) deposition subpoena to counsel
15 for Riot.  The deposition in the subpoena was set for November 29, 2023 at 10 AM.  Attached
16 hereto as **Exhibit 2** is a true and accurate copy of the subpoena.

17      6.    Counsel for Valve informed me by phone that the reason for the deposition date
18 was that the Court set a November 30 discovery cut-off in the action.  Attached as **Exhibit 3** is a
19 true and correct copy of the May 2, 2023 Order, in which the Court moved the fact discovery
20 deadline from October 31, 2023 to November 30, 2023 that was retrieved from the online docket
21 in *In re Valve Antitrust Litigation*, Case No. 2:21-cv-00563-JCC.

22      7.    On November 6, 2023, in an email to counsel for Valve, my colleague Jessica
23 Laird, another attorney at Munger, Tolles & Olson, reiterated Riot's objections but as a
24 compromise proposed to produce quarter-billion dollar ranges of total revenue generated annually
25

-3-
DECLARATION OF LISA DEMSKY

for the last 10 years by all consumer spending games, in-game content, and DLC, or other revenue received from monetization of Riot's products, stated separately for the U.S. and the rest of the world, on the condition that the production end Riot's obligation to produce documents in response to Valve's subpoena.  The email stated that, if the proposal was agreeable and documents were going to be produced, Riot would also be willing to have an individual sign a business records declaration authenticating the information if Valve agreed not to proceed with the Rule 30(b)(6) deposition.  Attached hereto as **Exhibit 4** is a true and accurate copy of the email thread containing this proposal.

8.    Valve rejected this offer by email on November 10, 2023 and asked again to meet and confer.  The same day, I responded over email indicating Riot's position that, because of the information Valve's counsel represented it had from other parties, Valve lacked a substantial need for Riot's information.  I did not make any additional proposals on behalf of Riot.  A true and accurate copy of this email is contained in the email thread in Exhibit 4.

9.    On November 14, Valve proposed that Riot produce narrower ($50 million) ranges of revenue information and stated that the parties had a November 30 discovery cut-off.  I informed Valve's counsel by email that the persons authorized to approve the production of Riot's highly confidential information were traveling and unavailable from November 13–19 due to Riot's hosting of the League of Legends World Championship in South Korea.  After Riot was able to consider Valve's counter proposal, Ms. Laird contacted counsel for Valve on November 22 and informed him that Riot was rejecting Valve's counter offer.  Ms. Laird reiterated Riot's initial objections as the basis for the rejection and re-stated its amenability to the offer made on November 6.  As no agreement had been made, Ms. Laird also stated that Riot assumed that the Rule 30(b)(6) deposition would not go forward "as there are no documents to authenticate." Given my conversations with Valve's counsel regarding the November 30 discovery cut-off and

purpose of the deposition, I assumed if Valve wanted to try to reach an agreement on document production, they would contact us sufficiently in advance of the November 29 date for authentication of documents such that documents could be produced prior to November 29. Attached hereto as **Exhibit 5** is a true and accurate copy of the email thread containing the exchanges between myself and Ms. Laird and Valve's counsel on November 14, 21, and 22.

10. The time for the November 29 Rule 30(b)(6) document authentication deposition passed. Then, later on November 29, 2023, counsel for Valve emailed Riot and attempted to revive and accept Riot's November 6 proposal. The same day, I contacted counsel for Valve and stated that the November 6 offer was no longer on the table and that Riot would continue to stand on its prior objections. As those objections included the highly sensitive nature of Riot's information, and as I had previously told Valve's counsel multiple times that one of Riot's concerns was that a protective order might not prevent Riot's information from becoming public if a case goes to trial, I pointed to a recent example of Riot's confidential non-party outside counsel only designated information being publicly disclosed at trial over Riot's objections and despite a Protective Order being in place. Attached hereto as **Exhibit 6** is a true and accurate copy of the email thread containing my exchange with Valve's counsel on November 29.

11. Late in the afternoon (after 4:00 pm) on November 30, 2023, I received a phone call from Mr. Breslauer in which he stated that Valve intended to file a motion to compel discovery in the Central District of California that same evening. Counsel for Valve informed me that Valve needed to file the motion that day because of the November 30 discovery cut-off in the case. At the time of this call, Valve had not sent Riot any written communication stating its intent to file such a discovery motion, requesting a pre-filing conference, or laying out the bases for such a motion pursuant to the Local Rules of the Central District of California. Valve's counsel said he intended to send me Valve's portion of the Joint Stipulation later that evening and asked if Riot

would be able to prepare its portion in time for a same-day filing.  This was the first notice I had received of Valve's intent to file a motion to compel, and I informed counsel for Valve that it was an unreasonable request, and that Riot would not be able to do this.  To reiterate this position in writing, at 7:35 PM, before Valve had sent anything further, Ms. Laird contacted counsel for Valve by email and stated that Valve had failed to comply with the Central District of California Local Rules and that Riot was not waiving them, including Rule 37-2.2, which requires that Valve send a draft Joint Stipulation stating the discovery dispute and provide Riot with seven days to add its portion to the Stipulation prior to the filing of a discovery motion.  Attached hereto as **Exhibit 7** is a true and accurate copy of the email thread containing Ms. Laird's exchange with Valve's counsel on November 30.

12. Despite Ms. Laird's email, at 9:55 PM on November 30, Valve sent a partial portion of its draft Joint Stipulation, without declarations or exhibits, in support of Valve's Motion to Compel and demanded Riot's response an hour later, by 11:00 PM that same day.  I responded by email within the hour, at 10:35 PM, reiterating that Valve had failed to comply with the Local Rules, referring Valve to Ms. Laird's email of 7:35 PM, and stating that Valve's simultaneous request that Riot stipulate to the filing of Valve's motion was improper.  On December 1, counsel for Valve indicated they were "willing to proceed with the provisions of the Local Rules," seemingly acknowledging they had previously failed to do so, and requested a pre-filing conference under Local Rule 37-1.  The email also requested that Riot provide its portion of the Joint Stipulation in seven days.  By separate email on December 1, counsel for Valve sent the exhibits and declaration portions of Valve's draft Joint Stipulation that had not been included in the late-night email on November 30.  Ms. Laird responded that same day, on December 1, agreeing to a conference under Rule 37-1 and stating Riot's position that Valve's Motion to Compel is untimely under both the Central District's Local Rules and the Local Rules for the

1  Western District of Washington. Her email stated that we could discuss Riot's position on
2  timeliness in this Rule 37-1 conference. Riot and Valve had not previously had a meet and confer
3  to discuss the issue of whether a motion filed after November 30 was untimely, or whether Valve
4  had complied with the Local Rules for filing discovery motions. Attached hereto as **Exhibit 8** is a
5  true and accurate copy of the email thread containing the exchanges between myself and Ms. Laird
6  and Valve's counsel on November 30 and December 1.

7        13.      On December 1, 2023 at approximately 2:00 PM, I called the Chambers of the
8  Honorable John Coughenour and spoke with a law clerk. The clerk confirmed that the fact
9  discovery cut-off in the Western District of Washington action was November 30, 2023, and, at
10 the time of the call, the cut-off had passed. The clerk also confirmed that Western District of
11 Washington Local Rule 16(b)(3) would prohibit Valve's Motion to Compel if filed in that
12 jurisdiction after November 30.

13       14.      I met and conferred with counsel for Valve on December 8, during which counsel
14 for Valve represented that the Court had eliminated the November 30 cut-off for all discovery
15 from subpoenaed non-parties. I asked to see a copy of the Order, and counsel for Valve said he
16 would send it to me after the call. Based on this representation, I continued discussing Valve's
17 discovery on the merits. Counsel for Valve stated that Valve had received publicly available
18 information and detailed revenue information, much more detailed than Riot's expired November
19 6 proposal, from other third parties in this action who are Riot's direct competitors. Outside
20 counsel for Valve also said he would see if Valve could provide a new proposal addressing Riot's
21 objections to the undue burden and lack of safeguarding involved in producing the requested
22 information. Following this call, Valve sent me and Ms. Laird the Court's December 1 order
23 regarding discovery. This Order does not appear to extend the discovery cut-off except for certain
24 specified third-party depositions, not including Riot's, whose cut-off was extended to December

15, 2023. This December 1 Stipulation and Order is attached as Exhibit F to the Declaration of Peter Breslauer.

15. On December 14, 2023, Valve sent over a proposal for additional safeguards, which still did not unequivocally confirm that Valve and Plaintiffs would not seek to disclose Riot's information publicly. On December 15, 2023, Riot agreed to produce annual revenue information (in ranges of $250 million) generated by consumer spending games, in-game content, and DLC, or other revenue received from monetization of Riot's products, for the U.S. for the last ten years.

16. On December 19, 2023, Valve's counsel requested to discuss this proposal, and I had a call with counsel for Valve on December 20, 2023, during which Valve asked that we go back to our client again and request that Riot also provide $250 million ranges of non-U.S. revenue data. I agreed to communicate that request but informed Valve that Riot was currently shut down through the end of the year, so it would be difficult to reach my client at Riot before January 2, 2024. Valve's counsel acknowledged that he was aware that companies in the industry often shut down during this period. Valve then sent their portion of the Joint Stipulation at 8:52 PM on Thursday, December 21, initiating the 7-day clock for Riot's portion of the stipulation under Rule 37 and asking for Riot's portion by December 28, 2023. Due to the holidays and pre-scheduled vacations, I requested and Valve agreed to extend that deadline to January 4, 2024.

I CERTIFY UNDER PENALTY OF PERJURY that the foregoing is true and correct.

EXECUTED at Los Angeles, California this 4th day of January, 2024.

*/s/ Lisa J. Demsky*
Lisa J. Demsky